## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| JOHN SOLAK, on behalf of himself and all others similarly situated,<br><br>                          Plaintiff,<br><br>     v.<br><br>FORD MOTOR COMPANY,<br><br>                          Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

The allegations in this complaint are based on personal knowledge as to Plaintiff's own conduct and are made on information and belief as to all other matters based on an investigation by counsel.

## INTRODUCTION

1.      This is a putative class action against Ford Motor Company ("Ford" or "Defendant") on behalf of individuals who purchased or leased a MY2022 Ford Maverick vehicle or any other Ford vehicle equipped with the same Safety Canopy side curtain airbags (the "Class Vehicles").

2.      In a nutshell, Ford admitted in September 2022 that the side curtain airbags in the Class Vehicles are defective, and that the defect "may increase the risk of injury in a crash." Ford also admitted that it would not provide a fix for the defect until some as yet undetermined date in 2023, and that owners they should be sure to wear their seatbelt and "drive with a little extra caution" until Ford finds a fix.

1

3.     The side curtain airbags are the same or substantially the same in all Class Vehicles.  Every Class Vehicle is equipped with same Safety Canopy side curtain airbags, which are "mounted to the roof side-rail sheet metal, behind the headliner, above each row of seats."  The Safety Canopy side curtain airbags are designed to "deploy[] during significant side crashes or when a certain likelihood of a rollover event is detected by the rollover sensor … The Safety Canopy inflates between the side window area and occupants to further enhance protection provided in side impact crashes and rollover events."[1]

4.     As described in greater detail below, side curtain airbags are important parts of the Class Vehicles, as they protect drivers from serious injuries and ejection during rollovers and sideways crashes.  Further, any side curtain airbags installed in a vehicle must comply with Federal Motor Vehicle Safety Standards for ejection mitigation, which are set forth at 49 C.F.R. § 571.226.  Among those requirements, federal rules state:

> When the ejection propulsion mechanism propels the ejection impactor into the impact target locations of each side daylight opening of a vehicle according to the test procedures specified in S5 of this standard, the most outboard surface of the ejection headform must not displace more than 100 millimeters [4 inches] beyond the

---

[1] AIRBAGS – HOW DOES THE SAFETY CANOPY WORK, 2022 MAVERICK OWNER'S MANUAL, https://www.fordservicecontent.com/Ford_Content/vdirsnet/Owner Manual/Home/Content?variantid=8431&languageCode=en&countryCode=USA& Uid=G2210899&ProcUid=G2127869&userMarket=USA&div=f&vFilteringEnabl ed=False&buildtype=web.

zero displacement plane.

49 C.F.R. § 571.226, S4.2.1.  In plain English, the purpose of this requirement is to "control the size of any gaps forming between the countermeasure (e.g., the ejection mitigation side curtain air bag) and the window opening, thus reducing the potential for both partial and complete ejection of an occupant."  76 Fed. Reg. 3212, 3214 (Jan. 19, 2011).  The National Highway Traffic Safety Administration ("NHTSA") believes that side curtain airbags that pass these requirements "will save 373 lives and prevent 476 serious injuries per year." *Id*.

5.     Unfortunately for consumers, the side curtain airbags in the Class Vehicles are defective in that the front-row side curtain airbags allow for displacement of as much as approximately 112 millimeters, which not only exceeds the federal requirements set forth above, but also Ford's own Acceptance Criteria of 93.1 millimeters (the "Airbag Defect").[2]  Effectively, as NHTSA put it, this means the Airbag Defect results in side curtain airbags that do not deploy properly.[3]

6.     The Airbag Defect is a severe safety defect that increases the risk of serious injury in a side impact crash or rollover, including the risk that passengers in the front will be ejected from the Class Vehicle.  In fact, the situation is so dangerous

---

[2] PART 573 SAFETY RECALL REPORT, at 2-3, https://static.nhtsa.gov/odi/rcl/2022/RCLRPT-22V594-7101.PDF.

[3] RECALLS, 2022 FORD MAVERICK, https://www.nhtsa.gov/vehicle/2022/FORD/MAVERICK/PU%25252FCC/FWD#recalls.

that Defendant has decided to recall approximately 65,000 MY2022 Ford Maverick vehicles that suffer from the Airbag Defect. The only problem is that Defendant's "remedy" is anything but.

7. While Ford says it will eventually replace the side curtain airbags, the timeline for this is unknown. Ford claims that the side curtain airbags "are anticipated to be available by January 2023," but it is unclear whether this will come to fruition. Further, given that Ford has not been able to identify the "root cause" of the Airbag Defect,[4] it is unclear whether replacing the side curtain airbags would fix the issue. In the meantime, because Ford has not provided consumers with replacement rental cars, consumers are forced to either (i) drive a dangerous vehicle from which they can be more easily ejected and injured, or (ii) cease using their Class Vehicle entirely, thereby losing out on the value of the Class Vehicle.

8. In short, as a result of the Airbag Defect and Ford's currently non-existent and delayed "remedy," owners of the Class Vehicles have suffered damages by: (i) overpaying for the Class Vehicles at the point of purchase, because they would not have purchased the Class Vehicles (or would have paid less for them) if the existence of the Airbag Defect had not been misrepresented or had been disclosed; (ii) incurring costs of obtaining or using alternative means of transportation; and (iii)

---

[4] PART 573 SAFETY RECALL REPORT, at 2, https://static.nhtsa.gov/odi/rcl/2022/RCLRPT-22V594-7101.PDF.

losing the use of the Class Vehicles caused by Ford's delay in implementing the promised repair.

## JURISDICTION AND VENUE

9.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because (i) the matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000, (ii) is a class action in which there are more than 100 Class Members, (iii) at least one member of the Classes (as defined below) is a citizen of a state different from Defendant, and (iv) greater than two-thirds of the members of the Classes reside in states other than the states in which Defendant is a citizen.

10.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendant resides in this District.

11.     This Court has personal jurisdiction over Defendant because it is headquartered in Michigan.

## PARTIES

12.     Plaintiff John Solak is a citizen of New York who resides in Binghamton, New York.  Mr. Solak owns a MY2022 Ford Maverick All Wheel Drive XL, which he purchased for his personal or household use in December 2021 from an authorized Ford dealer, Chenango Sales, in Greene, New York.  Prior to his purchase, Mr. Solak reviewed and relied on materials such as the owners' manual.

He also spoke with a sales representative about the Class Vehicle he purchased. None of the sources of information Mr. Solak reviewed disclosed the Airbag Defect. If there had been such a disclosure, or had Ford not misrepresented the safety, reliability, and/or efficacy of the side curtain airbags, Mr. Solak would not have bought his Class Vehicle or would have paid less for it.  As a result of the Airbag Defect, Mr. Solak has no other option but to drive his highly dangerous Class Vehicle and has therefore put himself at risk of more significant injuries in the event of a rollover crash.

13.    Defendant Ford Motor Company is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business and headquarters in Dearborn, Michigan, in the Eastern District of Michigan.

14.    Ford's business operations in the United States include the manufacture, distribution, and sale of motor vehicles and parts through its network of independent, franchised motor vehicle dealers.  Ford is engaged in interstate commerce in that it sells vehicles through this network located in every state of the United States.

15.    Ford sells its vehicles through Ford franchise dealerships or other licensed Ford dealers.  Ford distributes information, including window stickers, about the Class Vehicles to its dealers for the purpose of passing that information to consumers.  Ford also understands that its dealers pass on information from Ford

about the characteristics, benefits, and quality of the Class Vehicles to consumers. The dealers act as Ford's agents in selling the Class Vehicles and disseminating information about them to customers and potential customers.

## PRE-SUIT NOTICE

16.    On October 31, 2022, Plaintiff sent via certified mail a notice letter to Ford.  Among other information, the letter described the Airbag Defect and provided notice that Plaintiff intended to commence a lawsuit.  The letter further stated that it was "sent on behalf of all similarly situated U.S. owners of MY2022 Ford Maverick vehicles or any other vehicle equipped with the same side curtain airbags (the 'Class Vehicles')."  The letter further stated that it served as notice for "any other state-law consumer protection statute requiring pre-suit notice," and to the extent applicable, notice of breach of warranty.

17.    Ford was also on notice of allegations underlying Plaintiff's claims as result of the August 2022 recall of the Class Vehicles due to the Airbag Defect.

## FACTUAL ALLEGATIONS

**I.     Side Curtain Airbags And Governing Regulations**

18.    "Rollover crash is a kind of accident which causes relatively more

severe fatalities." [5]  Indeed, research has shown "although the ratio of rollover crash in all kind of the types is about 2~4% in USA in every year, the fatality rate in the rollover situation has been over 30%."[6]

19.    Due to the seriousness of rollover crashes, vehicle manufacturers like Ford install side curtain airbags in their vehicles, which "play[] a significant role in not only protecting an occupant head from side impact crashes, but also preventing an occupant from being partially or totally ejected during rollover accidents."[7] Indeed, NHTSA research "has found that full coverage of the side window is a key element to mitigation ejection." 76 Fed. Reg. at 3214.

20.    In the MY2022 Ford Maverick vehicles—one of the Class Vehicles at issue—the Safety Canopy side curtain airbags are "mounted to the roof side-rail sheet metal, behind the headliner, above each row of seats."  The airbags are designed to "deploy[] during significant side crashes or when a certain likelihood of a rollover event is detected by the rollover sensor … The Safety Canopy inflates between the side window area and occupants to further enhance protection provided

---

[5] KIM EUNG-SEO ET AL., A STUDY OF CURTAIN AIRBAG DESIGN FACTORS FOR ENHANCEMENT OF EJECTION MITIGATION PERFORMANCE, at 1 (2011) https://www-esv.nhtsa.dot.gov/Proceedings/22/files/22ESV-000173.pdf.

[6] *Id*.

[7] *Id*.

in side impact crashes and rollover events."[8]



//

//

//

<hr />

[8] AIRBAGS – HOW DOES THE SAFETY CANOPY WORK, https://www.fordservice
content.com/Ford_Content/vdirsnet/OwnerManual/Home/Content?variantid=8431
&languageCode=en&countryCode=USA&Uid=G2210899&ProcUid=G2127869&
userMarket=USA&div=f&vFilteringEnabled=False&buildtype=web.



21.     A side curtain airbag is an "ejection mitigation countermeasure" and therefore must meet rigorous safety standards.  49 C.F.R. § 571.226, S3 ("Ejection mitigation countermeasure means a device or devices, except seat belts, integrated into the vehicle that reduce the likelihood of occupant ejection through a side window opening, and that requires no action by the occupant for activation.").

22.     Among those safety regulations side curtain airbags must meet is the requirement that:

> [w]hen the ejection propulsion mechanism propels the ejection impactor into the impact target locations of each side daylight opening of a vehicle according to the test procedures specified in S5 of this standard, the most outboard surface of the ejection headform must not displace more than 100 millimeters [4 inches] beyond the zero displacement plane.

49 C.F.R. § 571.226, S4.2.1.

23.     To ensure that side curtain airbags comply with NHTSA regulations, the NHTSA conducts a "displacement test," during which the agency "launches a 40-pound projectile at four locations on the side curtain airbag, twice."[9]   The "impactor" is "based on the mass imposed by a 50th percentile male's head and upper torso."  76 Fed. Reg. at 3214.



**Figure 6 – NPRM Displacement Measurement at Target A2**

24.     In the displacement test, the side curtain airbag must prevent the "impactor" from traveling "100 millimeters (mm) [4 inches] beyond the location of

---

[9] Jonathan Ramsey, *2022 Ford Maverick Recalled Over Side Airbag Technicality*, YAHOO! NEWS, Aug. 15, 2022, https://ca.news.yahoo.com/2022-ford-maverick-recalled-over-134000181.html.

the inside surface of the vehicle glazing.  This displacement limit serves to control the size of any gaps forming between the countermeasure (e.g., the ejection mitigation side curtain air bag) and the window opening, thus reducing the potential for both partial and complete ejection of an occupant."  76 Fed. Reg. at 3214.

25.    The 100-millimeter limit was carefully considered by the NHTSA before being adopted.  Less displacement is of course better.  Indeed, Ford has an internal acceptance criterion of only 93.1 millimeters, and its December 2020 certification test for the MY2022 Ford Maverick showed displacement of only 82.5-88.4 millimeters.[10]

26.    However, *more* displacement than 100 millimeters is unacceptable. The NHTSA found:

> there [is] an increased likelihood that an opening could be formed between the curtain and the window opening through which an occupant could be ejected if the displacement were over 100 mm in the headform test.  In addition, a 100-mm limit [] also help[s] guard against the countermeasure being overly pliable or elastic so as to allow excessive excursion of an occupant's head and shoulders outside of the confines of the vehicle even in the absence of a gap.

76 Fed. Reg. at 3242.

27.    NHTSA further found the 100-millimeter displacement limit "will save 373 lives and prevent 476 serious injuries per year."  76 Fed. Reg. at 3214.

---

[10] PART 573 SAFETY RECALL REPORT, at 2, https://static.nhtsa.gov/odi/rcl/2022/RCLRPT-22V594-7101.PDF.

## II.    Ford's Incomplete Recall Due To The Airbag Defect

28.    On June 29, 2022, NHSTA's Office of Vehicle Safety Compliance contacted Ford "regarding the results of their FMVSS 226 compliance audit on the 2022 model year Maverick."  Specifically, the NHSTA found the front-row side curtain airbags allowed for displacement of approximately 112 millimeters, "which exceeds the federal regulation of 100 mm."[11]  In July 2022, Ford conducted its own testing of the front-row side curtain airbag, which found displacement of between 102 and 107.3 millimeters, also above the 100-millimeter limit.[12]

29.    Thus, the side curtain airbags do not meet the performance requirements of FMVSS 226 Ejection Mitigation for front-row passengers.

30.    Subsequently, on July 12, 2022, Ford issued a stop-ship order to its Hermosillo Assembly Plant.  Then, on August 8, 2022, Ford conducted a voluntary safety recall of approximately 65,000 affected Class Vehicles.

31.    The recall notice stated it was due to "improper deployment of an air bag [that] increases the risk of injury in a crash," which meant the Class Vehicles "fail[ed] to comply with the requirements of Federal Motor Vehicle Safety Standard

---

[11] PART 573 SAFETY RECALL REPORT, at 2, https://static.nhtsa.gov/odi/rcl/2022/RCLRPT-22V594-7101.PDF.

[12] *Id.* at 3.

number 226, 'Ejection Mitigation.'"[13]



## III.   Ford's Half-Baked "Remedy" Deprives Owners Of The Benefit Of Their Bargain And The Loss Of The Use Of Their Class Vehicle

32.    In response to the Airbag Defect, Ford's recall "remedy" is to replace the left and right side-curtain air bag modules.  The problem for consumers is that these "remedy parts" are not yet available\.

33.    As alleged above, the Airbag Defect is a serious safety defect due to the

---

[13] RECALLS, 2022 FORD MAVERICK, https://www.nhtsa.gov/vehicle/2022/FORD/ MAVERICK/PU%25252FCC/FWD#recalls.

increased serious injury risk in the event of a rollover crash.  Yet, despite having

100% of Class Vehicles at risk of experiencing the Airbag Defect, Ford has not

issued instructions to consumers to have them stop driving the Class Vehicles.

34.    Instead, Ford has offered to replace the defective airbags with "remedy

parts."  But Ford's "remedy" is not actually a remedy:

(a)    *First*, Ford is still investigating the "root cause of the" Airbag Defect,[14] and so the cause of the Airbag Defect is unknown. Accordingly, there is no guarantee that the "replacement parts" will fix the Airbag Defect when Ford does not know what caused the defect in the first place.

(b)    *Second*, the replacement parts are not yet available. Accordingly, consumers do not have an immediate fix for their Class Vehicles.  This leaves consumers in an impossible situation.  Either the consumer ceases using their Class Vehicle altogether due to the serious safety defect, or the consumer is forced to drive their Class Vehicle and put themselves at serious risk of injury in the event of a rollover or side impact crash.  In either event, consumers have lost the value of the Class Vehicles as a result of the Airbag Defect.

35.    Plaintiff and Class Members purchased their Class Vehicles based on

the understanding that they would be safe for normal use and had particular

characteristics, including working front-side curtain airbag.  Had Plaintiff and Class

Members known that their Class Vehicles were sold with defective front-side curtain

airbags, they would not have purchased their vehicle, or would not have done so on

---

[14] PART 573 SAFETY RECALL REPORT, at 3, https://static.nhtsa.gov/odi/rcl/2022/RCLRPT-22V594-7101.PDF.

the same terms.

## IV.    Ford Breached Its Warranties

36.    Ford voluntarily warranted through the owner's manual and otherwise that the side curtain airbags were capable of providing enhanced protection to consumers in the event of a side impact crash.  For instance, Plaintiff's Monroney Label—which is identical to that included with all MY2022 Ford Maverick vehicles—lists the "Safety Canopy" airbags as the first bullet under "Safety/Security":



37.     Ford breached that promise by selling Class Vehicles that were affected by the Airbag Defect.   Ford further breached that promise when it failed to immediately replace the defective side curtain airbags and failed to provide consumers with a suitable remedy like a rental car, thereby depriving consumers of the benefit of their bargain and the lost use of their Class Vehicle.

38.     In addition to these express warranties formed through Ford's voluntary representations, the Class Vehicles are also sold with materially identical "Bumper to Bumper Warranties" (the "B2B Warranty").[15]   The B2B Warranty runs for three years or 36,000 miles, whichever occurs first, and purports to cover "all parts on your vehicle that malfunction or fail during normal use during the applicable coverage period due to a manufacturing defect in factory-supplied materials or factory workmanship."   Notably, however, Ford warrants that the side curtain

---

[15] *See generally* 2022 MODEL YEAR FORD WARRANTY GUIDE, https://www.ford.com/cmslibs/content/dam/brand_ford/en_us/brand/resources/general/pdf/warranty/2022-Ford-Car-Lt-Truck-Hybrid-Warranty-version-2_frdwa_EN-US_12_2020.pdf.

17

airbags are covered for the earlier of five (5) years or 60,000 miles.

**WHAT IS COVERED?**

Your NEW VEHICLE LIMITED WARRANTY gives you specific legal rights. You may have other rights that vary from state to state. Under your New Vehicle Limited Warranty if:

- your Ford vehicle is properly operated and maintained, and

- was taken to a Ford dealership for a warranted repair during the warranty period,

then authorized Ford Motor Company dealers will, without charge, repair, replace, or adjust all parts on your vehicle that malfunction or fail during normal use during the applicable coverage period due to a manufacturing defect in factory-supplied materials or factory workmanship.

(2) Your vehicle's safety belts and air bag Supplemental Restraint System (SRS) are covered for an extended Safety Restraint Coverage Period, which lasts for five years or 60,000 miles, whichever occurs first.

39.     The B2B Warranty begins "the day you take delivery of your new vehicle or the day it is first put into service (for example, as a dealer demonstrator), whichever occurs first."

**KNOW WHEN YOUR WARRANTY BEGINS**

Your **Warranty Start Date** is the day you take delivery of your new vehicle or the day it is first put into service (for example, as a dealer demonstrator), whichever occurs first.

40.     Unbeknownst to Plaintiff and Class Members at the time of purchase, the Class Vehicles had a uniform manufacturing defect in factory-supplied materials and/or factory workmanship.  Ford's failure to manufacture and install the side curtain airbag in such a way as to prevent manifestation of the Airbag Defect during normal operation is a defect in materials, workmanship and factory preparation.

41.     In addition, if the Airbag Defect manifests in deployment failure,

Plaintiff and other Class Members could be gravely injured, leading to numerous medical expenses dealing with the ramifications of a severe crash.

42.    Ford breached its express and implied warranties through which it promised to, *inter alia*, (1) provide Class Vehicles fit for the ordinary purpose for which they were sold; (2) sell the Class Vehicles with Safety Canopy side curtain airbags that properly "deploy[] during significant side crashes or when a certain likelihood of a rollover event is detected by the rollover sensor" and "further enhance protection provided in side impact crashes and rollover events," and (3) repair and correct manufacturing defects or defects in materials or workmanship of any parts they supplied, including the Airbag Defect.  Because the Airbag Defect was present at the time of sale or lease of the Class Vehicles, Ford is required to repair or replace the clutch and components under the terms of the warranties.

43.    Despite actual and constructive knowledge of Class Vehicle defects as described in this complaint, Ford has failed to cure Class Vehicle defects within a reasonable time and deprived Class Members of the use of their Class Vehicles, thereby breaching the terms of the express warranty.

## CLASS ACTION ALLEGATIONS

44.    Plaintiff brings this action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2) and/or (b)(3) on behalf of the following Class and Subclass:

> All persons in the United States who purchased, leased, or own a Class Vehicle (the "Nationwide Class" or "Class");

All persons in New York who purchased, leased, or own a Class Vehicle (the "Subclass").

45.     Subject to additional information obtained through further investigation and discovery, the foregoing class definitions may be expanded or narrowed by an amended complaint, or narrowed at class certification, including through the use of multi-state subclasses.

46.     Specifically excluded from the Classes are Ford, Ford's officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by Ford, and its heirs, successors, assigns, or other persons or entities related to or affiliated with Ford and/or Ford's officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

47.     **Numerosity.** The members of the proposed Classes are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable.  Indeed, there are at least 65,000 Class Members based on the recall notice for the MY2022 Ford Maverick.  Although the precise number of proposed members is unknown to Plaintiff, the true number of Class Members is known by Ford.  More specifically, Ford and its network of authorized dealers, maintains databases that contain the following information: (i) the name of each Class Member that leased or purchased a vehicle; and (ii) the address of each Class Member.  Thus,

Class Members may be identified and notified of the pendency of this action by first class mail, electronic mail, and/or published notice, as is customarily done in consumer class actions.

48. **Existence and predominance of common questions of law and fact.** Common questions of law and fact exist as to all Class Members and predominate over any questions affecting only individual Class Members. These common legal and factual questions include, but are not limited to, the following:

(a) Whether the side curtain airbags installed in the Class Vehicles violate FMVSS 226;

(b) Whether the side curtain airbags installed in the Class Vehicles were defective in material, manufacturing and/or workmanship;

(c) Whether the Airbag Defect in the Class Vehicles presents a safety risk;

(d) Whether Ford knew or should have known about the Airbag Defect when it sold the Class Vehicles;

(e) Whether Ford had a duty to disclose that the side curtain airbags installed in the Class Vehicles are defective and/or prone to premature failure and present a safety risk;

(f) Whether Ford breached a duty to disclose the Airbag Defect;

(g) Whether Ford intentionally and knowingly concealed, suppressed and/or omitted material facts about the existence of the Airbag Defect;

(h) Whether Class Members would pay less for a Class Vehicle if Ford, at the time of purchase or lease, disclosed the Airbag Defect;

(i)     Whether Class Members were deprived of the use of their Class Vehicles as a result of the Airbag Defect;

(j)     Whether Ford is liable to Plaintiff and Class Members under the causes of action alleged in this complaint; and

(k)     Whether Plaintiff and Class Members are entitled to damages, restitution, equitable, injunctive, compulsory, and/or other relief.

49.     **Typicality.**  Plaintiff's claims are typical of the claims of the other Class Members in that Plaintiff sustained damages arising out of the same illegal actions and conduct by Ford.

50.     **Adequacy of Representation.**  Plaintiff will fairly and adequately protect the interests of Class Members.  Plaintiff has retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Classes.  Furthermore, Plaintiff has no interests that are antagonistic to those of the Classes.

51.     **Superiority.**  A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by Class Members is relatively small compared to the burden and expense of individual litigation of their claims against Ford.  It would, thus, be virtually impossible for Class Members, on an individual basis, to obtain effective redress for the wrongs committed against them.  Furthermore, even if Class Members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory

judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

52.     In the alternative, the Class and Subclass may also be certified because:

(a)     the prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudication with respect to individual Class Members that would establish incompatible standards of conduct for Ford;

(b)     the prosecution of separate actions by individual Class Members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other members of the Classes not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

(c)     Ford acted or refused to act on grounds generally applicable to the Class and Subclass whole, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Classes as a whole.

## **CLAIMS FOR RELIEF**

## **COUNT I**
**Breach of Express Warranty**

53.     Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

54.    Plaintiff brings this claim on behalf of himself and the Classes.

55.    Ford is and was at all relevant times merchants and sellers of motor vehicles as defined under the Uniform Commercial Code.

56.    With respect to leases, Ford is and was at all relevant times lessors of motor vehicles as defined under the Uniform Commercial Code.

57.    The Class Vehicles are and were at all relevant times goods within the meaning of the Uniform Commercial Code.

58.    As described above, Ford promised, warranted, and/or advertised that the Class Vehicles were equipped with Safety Canopy side curtain airbags that would properly "deploy[] during significant side crashes or when a certain likelihood of a rollover event is detected by the rollover sensor" and "further enhance protection provided in side impact crashes and rollover events."  Ford also represented on its Monroney Label that the Safety Canopy side curtain airbags were a "Safety/Security" feature of the Class Vehicles.  These warranties, as well as advertisements, brochures, and other statements in the media regarding the Class Vehicles formed a basis of the bargain that was reached when Plaintiff and Class members purchased or leased their Class Vehicles.

59.    The Class Vehicles owned by Plaintiff and Class Members are vulnerable to experiencing the Airbag Defect during normal operation, including and especially during a side impact or rollover crash.  Plaintiff and Class Members had

no knowledge of the existence of the defect, which was known and concealed by Ford.  Despite the existence of these warranties, Ford failed to inform Plaintiff and Class Members that the Class Vehicles contained the Airbag Defect.

60.    Plaintiff and Class Members could not have reasonably discovered the Airbag Defect prior to failure.  Due to the fact that the parts affected by the Airbag Defect are internal components, and the side curtain airbags are only supposed to deploy during a side impact or rollover crash, Plaintiff and Class Members have no warning that the Airbag Defect will manifest until there is a failure.

61.    Because of the Airbag Defect, the Class Vehicles are not safe and owners of these vehicles have lost confidence in the ability of the Class Vehicles to perform the function of safe and reliable transportation.  Further, because of the delay in issuing its recall, Class Members have been deprived of the normal and reasonable use of their Class Vehicle.

62.    Ford breached its express warranties by selling and leasing Class Vehicles that were defective with respect to materials, workmanship, or factory preparation.  In other words, even though the vehicles are warranted to have side curtain airbags that "further enhance the protection provided [to] occupants in side impact crashes," the side curtain airbags fail during normal operation.

63.    Ford further breached its express warranties by issuing an inadequate recall remedy.  Ford has not identified the cause of the Airbag Defect, and so there

is no guarantee that the replacement side curtain airbags will fix the issue. Even if they do, Plaintiff and other Class Members will be deprived of the use of their Class Vehicles while waiting for the replacement airbags.

64.     Because of Ford's breach of express warranty as set forth herein, Plaintiff and Class Members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiff and Class Members of the purchase or lease price of all Class Vehicles currently owned or leased, for compensation for the lost time value of their Class Vehicles, and for such other incidental and consequential damages as allowed.

65.     As a direct and proximate result of Ford's breach of express warranties, Plaintiff and Class Members have been damaged in an amount to be determined at trial.

## COUNT II
### Breach of Implied Warranty

66.     Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

67.     Plaintiff brings this claim on behalf of himself and the Classes.

68.     Ford marketed and placed the Class Vehicles into the stream of commerce with the intent they be purchased by Plaintiff and Class Members.

69.     Ford is a "merchant" for purposes of the Uniform Commercial Code because the company regularly sells consumer automobiles of this kind.

26

70.     As a result of the Airbag Defect, the Class Vehicles were defective and not of merchantable quality when they left Ford's control.  Plaintiff and Class Members used their Class Vehicles for the ordinary purpose that consumer automobiles are used—to reliably, comfortably, and safely transport passengers and belongings for personal, family, or household purposes.  Despite Plaintiff's and Class Members' ordinary and expected use of their vehicles, the Class Vehicles did not adhere to minimal consumer expectations, were not of fair and average quality, and would not pass without objection in the consumer automotive industry at the time of sale because the side curtain airbags allow for displacement of as much as approximately 112 millimeters, which exceeds FMVSS 226.

71.     Ford has been given a reasonable opportunity to cure its breach of the implied warranty of merchantability and/or Plaintiff and Class Members were not required to do so because such an opportunity would be futile.  Ford knew or should have known about the Airbag Defect since it first sold the Class Vehicles and still has not offered a suitable remedy.

72.     Plaintiff and other Class Members who purchased or leased a Class Vehicle directly from Ford are entitled to the benefit of their bargain: a Class Vehicle with side curtain airbags that deploy properly and allow for no more than 100 millimeters of displacement in accordance with federal law.

73.     Likewise, Class Members who purchased or leased a Certified Pre-

Owned Class Vehicle are entitled to the benefit of their bargain: a Class Vehicle with side curtain airbags that deploy properly and allow for no more than 100 millimeters of displacement in accordance with federal law.

74.    Class Members are also entitled to compensation for the lost use of their Class Vehicles while Ford's recall "remedy" remains pending and unfulfilled.

75.    Class members who purchased new Class Vehicles from Ford-affiliated dealerships and Certified Pre-Owned Class Vehicles are the intended ultimate consumers of the Class Vehicles, and therefore are third-party beneficiaries for the purposes of their implied warranty claims.

76.    As a direct and proximate result of Ford's breach of implied warranty, Plaintiff and Class Members have been damaged in an amount to be determined at trial.

## COUNT III
### Unjust Enrichment

77.    Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

78.    Plaintiff brings this claim on behalf of himself and the Classes.

79.    This claim is brought pursuant to the laws of the State of Michigan.

80.    To the extent required by law, Plaintiff brings this claim in the alternative to other legal claims alleged in the complaint, as permitted under Federal Rule of Civil Procedure 8.

81.   Plaintiff and members of the Classes conferred a benefit on Ford by leasing or purchasing the Class Vehicles.  Ford was and should have been reasonably expected to provide Class Vehicles free from the Airbag Defect.

82.   Ford unjustly profited from the lease and sale of the Class Vehicles at inflated prices as a result of its omissions and concealment of the Airbag Defect in the Class Vehicles.  Ford benefited, at Plaintiff's expense, when it sold or leased Plaintiff a vehicle that was inferior to the vehicle Plaintiff thought he was purchasing, yet the price he paid was the price for a supposedly better functioning vehicle he thought he was purchasing.

83.   The unjust enrichment claim is not limited to omissions made at the point of sale.   Ford affirmatively misrepresented that the Class Vehicles were equipped with Safety Canopy side curtain airbags that would properly "deploy[]" during significant side crashes or when a certain likelihood of a rollover event is detected by the rollover sensor" and "further enhance protection provided in side impact crashes and rollover events."  Ford also represented on its Monroney Label that the Safety Canopy side curtain airbags were a "Safety/Security" feature of the Class Vehicles.

84.   Further, Ford also unjustly profited at the expense of class members because it knows the Airbag Defect is substantially likely to materialize during the useful life of the Class Vehicles, yet has refused to provide an appropriate repair.

85.    As a proximate result of Ford's omissions and concealment of the Airbag Defect in the Class Vehicles, and as a result of Ford's ill-gotten gains, benefits and profits, Ford has been unjustly enriched at the expense of Plaintiff and Class Members.  It would be inequitable for Ford to retain its ill-gotten profits without paying the value thereof to Plaintiff and Class Members.

86.    There is a direct relationship between Ford on the one hand, and Plaintiff and Class Members on the other, sufficient to support a claim for unjust enrichment.  Ford failed to disclose the Airbag Defect to improve retail sales, which in turn improved wholesale sales.  Conversely, Ford knew that disclosure of the Airbag Defect would suppress retail and wholesale sales of the Class Vehicles, suppress leasing of the Class Vehicles, and would negatively impact the reputation of Ford's brand among Plaintiff and Class Members.

87.    Plaintiff and members of the Classes are entitled to restitution in the amount of Ford's ill-gotten gains, benefits and profits, including interest, resulting from their unlawful, unjust and inequitable conduct.

88.    Plaintiff and members of the Classes seek an order requiring Ford to disgorge its gains and profits to Plaintiff and members of the Classes, together with interest, in a manner to be determined by the Court.

## COUNT IV
### Deceptive Acts or Practices,
### New York GBL § 349

89.     Plaintiff hereby incorporates by reference and re-alleges the allegations contained in the preceding paragraphs of this Complaint.

90.     Plaintiff brings this claim on behalf of himself and on behalf of the other members of the Subclass against Defendant.

91.     By the acts and conduct alleged herein, Defendant committed unfair or deceptive acts and practices concerning the Airbag Defect.

92.     The foregoing deceptive acts and practices were directed at consumers.

93.     The foregoing deceptive acts and practices are misleading in a material way because, in the course of Defendant's business, it willfully failed to disclose and actively concealed the Airbag Defect as described above.  Further, Defendant misrepresented the true nature of the Class Vehicles.  Accordingly, Defendant made untrue, deceptive, or misleading representations of material facts and omitted and/or concealed material facts.

94.     Defendant engaged in deceptive acts or practices when it misrepresented the safety and functionality of the Class Vehicles and their airbags, and/or failed to disclose material information concerning the Class Vehicles which was known to Defendant at the time of the sale.  Defendant withheld the information about the Airbag Defect in order to postpone or prevent its warranty obligations and

to induce the consumer to enter into a transaction.

95.     The reliability and safety of the Class Vehicles was material to Plaintiff and the other members of the Subclass.  Had Plaintiff and the other members of the Subclass known that their Class Vehicles had the Airbag Defect, they would not have purchased the Class Vehicles, or would have done so on materially different terms.

96.     Because Defendant's deception takes place in the context of automobile safety, that deception affects the public interest.

97.     Plaintiff purchased his vehicle in New York.

98.     Defendant's unlawful conduct constitutes unfair acts or practices that have the capacity to and that do deceive consumers and have a broad impact on consumers at large.

99.     Plaintiff and the other members of the Subclass suffered injury caused by Defendant's misrepresentations and failure to disclose material information. Plaintiff and the other members of the Subclass overpaid for their Class Vehicles and did not receive the benefit of their bargain as a result of Defendant's misrepresentations and omissions.  The defective Class Vehicles pose a grave safety threat.  The value of the Class Vehicles has diminished now that the defect has come to light, and that the Class Vehicles are not safe.

100.    Moreover, Plaintiff and Subclass Members have also been deprived of

the benefit of the bargain because they have lost the normal and reasonable use of their Class Vehicles as a result of the Airbag Defect.

101.   On behalf of himself and other members of the Subclass, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover actual damages or fifty dollars, whichever is greater, and reasonable attorneys' fees, and any other relief permitted under New York GBL § 349.

## COUNT V
### False Advertising,
### New York GBL § 350

102.   Plaintiff hereby incorporates by reference and re-alleges the allegations contained in all preceding paragraphs of this Complaint.

103.   Plaintiff brings this claim on behalf of himself and on behalf of the members of the proposed Subclass.

104.   Based on the foregoing, Defendant has engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of New York GBL § 350.

105.   The foregoing acts were directed at consumers and was likely to mislead a reasonable consumer acting reasonably under the circumstances.

106.   This misrepresentations and omissions at issue here resulted in consumer injury or harm to the public interest.

107.   Plaintiff and Subclass Members were injured as a direct and proximate

result of Defendant's violation because (a) they would not have purchased the Class

Vehicles had Defendant not misrepresented or failed to disclose the Airbag Defect,

(b) they overpaid for the Class Vehicles as a result of Defendant's misrepresentations

and omissions concerning the Airbag Defect,

(c) the Class Vehicles do not have the characteristics, uses, or benefits as promised,

and (d) Plaintiff and Subclass Members have lost the reasonable and normal use of

their Class Vehicles.   As a result, Plaintiff and Subclass Members have been

damaged.

108.   On behalf of himself and other members of the Subclass, Plaintiff seeks

to enjoin the unlawful acts and practices described herein, to recover actual damages

or five hundred dollars per violation, whichever is greater, and reasonable attorneys'

fees, and any other relief permitted under New York GBL § 350.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly

situated, respectfully asks this Court to enter judgment against Ford and in favor of

Plaintiff and the Classes, and award the following relief:

(a)   An order certifying this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, declaring Plaintiff representative of the Class and Subclass, and naming Plaintiff's counsel as counsel for the Class and Subclass;

(b)   An order awarding declaratory relief and enjoining Ford from continuing the unlawful, deceptive, fraudulent, harmful, and unfair business conduct and practices alleged herein;

(c)  Injunctive and equitable relief in the form of either (i) a comprehensive program to repair the Airbag Defect, and/or buyback all Class Vehicles, and to fully reimburse and make whole all Class and Subclass Members for all costs and economic losses, or (ii) rental vehicles or other expenses to compensate Class and Subclass Members for the lost reasonable and normal use of their Class Vehicles;

(d)  A declaration that Ford is financially responsible for all Class notice and the administration of Class relief;

(e)  An order awarding to the extent available under governing law, restitution, disgorgement, punitive damages, treble damages, exemplary damages and statutory damages; and compensatory damages for economic loss and out-of-pocket costs in an amount to be determined at trial;

(f)  A declaration that Ford is required to engage in corrective advertising;

(g)  An order requiring Ford to pay both pre- and post- judgment interest on any amounts awarded;

(h)  An award of costs, expenses, and attorneys' fees as permitted by law; and

(i)  Such other or further relief as the Court may deem appropriate, just, and equitable.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated:  January 10, 2023                    Respectfully submitted,

**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**

By: */s/ Nick Suciu III*
        Nick Suciu III

Nick Suciu III
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Telephone: (313) 303-3472
Facsimile:  (865) 522-0049
E-Mail: nsuciu@milberg.com

Gary M. Klinger
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Telephone: (866) 252-0878
Facsimile:  (865) 522-0049
E-Mail: gklinger@milberg.com

**BURSOR & FISHER, P.A.**
Frederick J. Klorczyk III
Max S. Roberts
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email:  fklorczyk@bursor.com
       mroberts@bursor.com

**BURSOR & FISHER, P.A.**
Joel D. Smith
1990 North California Blvd., Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email:  jsmith@bursor.com
*Attorneys for Plaintiff*