UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN SOLAK, on behalf of himself
and all others similarly situated,

            Plaintiff,               Civil Action No. 23-cv-10064
                                              HON. BERNARD A. FRIEDMAN

vs.

FORD MOTOR COMPANY,

            Defendant.

_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

I.    <u>Introduction</u>

    John Solak commenced this putative class action against Ford Motor Company on behalf of anyone who purchased or leased a 2022 Ford Maverick or any other Ford vehicle equipped with the same defective safety canopy side curtain airbags.

    Before the Court is Ford's motion to dismiss the complaint. (ECF No. 13). Solak responded. (ECF No. 15). Ford filed a reply. (ECF No. 16). The Court will decide the motion without oral argument pursuant to E.D. Mich. LR 7.1(f)(2). For the following reasons, the motion is granted.

II.    <u>Background</u>

  *A. Factual History*

  The front-row side curtain airbags in Ford's model year 2022 Maverick vehicles are defective. (ECF No. 1, PageID.1, ¶ 2).  The airbags "allow for displacement of as much as approximately 112 millimeters," which exceeds federal government standards of 100 millimeters. (*Id.*, PageID.2-3, ¶¶ 4-5).  The increased displacement translates into a larger gap forming between the side curtain airbags and the front-row side windows when the airbags deploy. (*Id.*, PageID.3-4, ¶¶ 4, 6). The defect "increases the risk of serious injury in a side impact crash or rollover, including the risk that passengers in the front will be ejected from" the vehicles. (*Id.*, PageID.3, ¶ 6).

  The National Highway Traffic Safety Administration's ("NHTSA") Office of Vehicle Safety Compliance initially identified the airbag defect during a June 29, 2022 compliance audit. (*Id.*, PageID.13, ¶ 28; ECF No. 13-2, PageID.102).  The agency contacted Ford about the audit results and the company conducted its own performance tests on three sample vehicles the following month. (ECF No. 13-2, PageID.103).  Those tests yielded displacement measures between 102 and 107.3 millimeters, which likewise exceeded federal government standards. (*Id.*).

  Ford issued a voluntary safety recall for approximately 65,000 model year 2022 Maverick vehicles on August 8, 2022. (ECF No. 1, PageID.13-14, ¶¶ 30-31).

The company notified vehicle owners about the defect in September 2022. (ECF No. 13-2, PageID.104).   The notice letters explained how Ford intends to repair the vehicles free of charge. (ECF No. 13-3, PageID.106).  And Ford offered to reimburse vehicle owners who paid for repairs out-of-pocket before May 2022. (ECF No. 13-2, PageID.103).

> B.   *Procedural History*

On October 31, 2022, Solak notified Ford of his intent to file a lawsuit on behalf of himself and "all similarly situated U.S. owners of MY2022 Ford Maverick Vehicles." (ECF No. 1, PageID.7, ¶ 16).  Solak commenced this putative class action almost two months later. (ECF No. 1).  The complaint alleges causes of action for (1) breach of express warranty, (2) breach of implied warranty, (3) unjust enrichment, and (4) violations of New York's General Business Law §§ 349 and 350.  Ford now moves to dismiss the complaint in its entirety. (ECF No. 13).

III.  Legal Standards

Fed. R. Civ. P. 12(b)(1) provides for the dismissal of an action where the district court lacks subject matter jurisdiction.  Rule 12(b)(1) motions for lack of subject matter jurisdiction may challenge either (1) the facial sufficiency of the pleading itself, or (2) the factual grounds for invoking subject matter jurisdiction. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).  Facial challenges address whether the complaint alleges a basis for subject matter jurisdiction.  The Court

views the complaint's allegations as true and construes them in the light most favorable to the nonmoving party. *Id.*

Factual challenges question the factual existence for subject matter jurisdiction. District courts may, in this context, review evidence outside of the pleadings, weigh the evidence, and "determine the effect of that evidence on the court's authority to hear the case." *Cartwright v. Garner*, 751 F.3d 752, 759-60 (6th Cir. 2014). Plaintiffs bear the burden of establishing whether subject matter jurisdiction exists. *DLX, Inc. v. Commonwealth of Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004).

When reviewing a motion to dismiss the complaint for failing to state a claim, the Court must "construe the complaint in the light most favorable to the plaintiff and accept all factual allegations as true." *Daunt v. Benson*, 999 F.3d 299, 308 (6th Cir. 2021) (cleaned up); *see also* Fed. R. Civ. P. 12(b)(6). "The factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead sufficient factual matter to render the legal claim plausible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quotation omitted). The Court may consider "exhibits attached to the complaint" to decide the motion. *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001).

IV.   <u>Analysis</u>

    *A.*   *Article III Standing*

Ford initially targets the jurisdictional basis for this litigation, arguing that Solak lacks the requisite standing to bring suit. (ECF No. 13, PageID.78-81).

Federal courts may only hear "cases" and "controversies." U.S. Const., art. III, § 2.  Absent this prerequisite, they lack subject matter jurisdiction to entertain a proceeding. *Imhoff Inv., LLC v. Alfoccino, Inc.*, 792 F.3d 627, 631 (6th Cir. 2015) ("Where the plaintiff has no Article III standing to bring a case, jurisdiction is lacking and the court must dismiss it."); *see also Detroit v. City of Dearborn*, 206 F.3d 618, 622 (6th Cir. 2000).

Article III standing, as it is commonly known, "developed in our case law to ensure that federal courts do not exceed their authority as it has been traditionally understood." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  To establish Article III standing, Solak must show (1) that he suffered an injury-in-fact, (2) the injury is fairly traceable to Ford's misconduct, and (3) a decision in his favor is likely to redress the alleged harm. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180 (2000).

The parties solely dispute whether Solak and the putative class members suffered an injury-in-fact, *i.e.*, the first prong. (ECF No. 13, PageID.79-81; ECF No. 15, PageID.170-75).  An injury-in-fact requires a showing that the plaintiff suffered

(1) "an invasion of a legally protected interest," that is both (2) "concrete and particularized," and (3) "actual or imminent, not conjectural or hypothetical." *Spokeo*, 578 U.S. at 339 (quotation omitted).  To be "particularized," the injury must harm "the plaintiff in a personal and individual way." *Id.* (cleaned up).  A "concrete" injury must be "real" as opposed to "abstract," "it must actually exist." *Id.* at 340.

"When a manufacturer sells a product that is defective, which causes consumers to be misled at the point of sale into paying more and getting less than they believed they were purchasing, the consumers suffer an injury in fact, even if that defect does not manifest itself in every individual unit." *In re FCA US LLC Monostable Elec. Gearshift Litig.*, MDL No. 2744, 2017 U.S. Dist. LEXIS 58745, at *18 (E.D. Mich. Apr. 18, 2017) (citation omitted); *see also Sharp v. FCA United States LLC*, No. 21-12497, 2022 U.S. Dist. LEXIS 194163, at *13 (E.D. Mich. Oct. 25, 2022); *Raymo v. FCA US LLC*, 475 F. Supp. 3d 680, 692 (E.D. Mich. 2020) ("Because defective trucks are just not worth as much as defect-free trucks, Plaintiffs have adequately alleged an economic injury sufficient to establish standing under Article III. . .").

Solak asserts that the putative class members overpaid for their vehicles at the point of purchase because they would have declined to buy the cars altogether, or paid less for them, had they known about the defective airbags. (ECF No. 1, PageID.4-5, 15-16, ¶¶ 8, 12, 35).  These allegations are sufficient to plausibly

demonstrate that Solak and the putative class members suffered an injury-in-fact. *See Sharp*, 2022 U.S. Dist. LEXIS 194163, at *13-14; *Raymo*, 475 F. Supp. 3d at 692.   And since the complaint plausibly alleges that the overpayments are fairly traceable to Ford's failure to disclose the existence of the defect, and that money damages awarded in the putative class's favor are likely to compensate for the overpayment, the remaining Article III standing elements are satisfied as well. *See White v. United States*, 601 F.3d 545, 551-52 (6th Cir. 2010) (requiring plausible allegations to support Article III standing).

Solak and the putative class members, therefore, possess Article III standing to maintain this lawsuit.

### B.   *Prudential Mootness*

Ford next insists that the case is prudentially moot. (ECF No. 13, PageID.81-84).   Mootness doctrine is an adjunct to Article III's "cases" and "controversies" requirement. *See Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477-78 (1990); *DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974).   Although mootness may arise in different contexts, for different reasons, and take different forms, the common thread is that:

> Always the doctrine describes a situation where events in the world have so overtaken a lawsuit that deciding it involves more energy than effect, a waste of effort on questions now more pedantic than practical.   In some cases mootness bears a constitutional countenance, acting as a jurisdictional bar against even entertaining a case.   Other times mootness carries a more

7

> prudential complexion, permitting us to withhold relief we have the authority to grant. Other times still, a case finds itself mooted by a tangle of constitutional and prudential considerations.

*Winzler v. Toyota Motor Sales USA, Inc.*, 681 F.3d 1208, 1209 (10th Cir. 2012) (Gorsuch, J.).

Prudential mootness typically occurs when "a controversy, not actually moot, is so attenuated that considerations of prudence and comity for coordinate branches of government counsel the court to stay its hand, and to withhold relief it has the power to grant." *Chamber of Commerce of U.S. of America v. U.S. Dep't of Energy*, 627 F.2d 289, 291 (D.C. Cir. 1980); *see also Pacheco v. Ford Motor Co.*, No. 22-11927, 2023 U.S. Dist. LEXIS 49032, at *6 (E.D. Mich. Mar. 22, 2023). The doctrine is discretionary and permits a court to "dismiss [a lawsuit] not technically moot if circumstances [have] changed since the beginning of litigation that forestall any occasion for meaningful relief." *Hunt v. Imperial Merch. Servs. Inc.*, 560 F.3d 1137, 1142 (9th Cir. 2009) (quotation omitted).

Under these conditions, "equity may demand not decision but dismissal." *Winzler*, 681 F.3d at 1210; *see also Sharp*, 2022 U.S. Dist. LEXIS 194163, at *16. The party asserting prudential mootness carries the burden of establishing the absence of any effective relief the court may conceivably provide. *See Cleveland Branch, NAACP v. City of Parma*, 263 F.3d 513, 531 (6th Cir. 2001).

The "[p]rudential mootness doctrine often makes its appearance in cases where a plaintiff starts off with a vital complaint but then a coordinate branch of government steps in to promise the relief [the plaintiff] seeks." *Winzler*, 681 F.3d at 1210.  Here, Ford triggered NHTSA's oversight when it issued the September 2022 recall. *See id.* at 1211; *Pacheco*, 2023 U.S. Dist. LEXIS 49032, at *8-9.

NHTSA supervises "each safety recall to make sure owners receive safe, free, and effective remedies from manufacturers according to the [National Traffic and Motor Vehicle] Safety Act and Federal regulations." Nat'l Highway Traffic Safety Admin., *Safety Issues & Recalls*, https://www.nhtsa.gov/recalls (last visited Jul. 14, 2023); *see also* 49 U.S.C. § 30120(e) ("If the Secretary decides a manufacturer has not reasonably met the remedy requirements, the Secretary shall order the manufacturer to take specified action to meet those requirements and may take any other action authorized under this chapter.").

As part of the voluntary recall, Ford intends to replace the left and right-side curtain air bags and reimburse owners who already paid for repairs out-of-pocket. (ECF No. 13-2, PageID.103; ECF No. 13-3, PageID.106).  These remedial measures, coupled with NHTSA's authority to ensure they are fully implemented, renders Solak's claims prudentially moot. *See, e.g., Hadley v. Chrysler Group, LLC*, 624 F. App'x 374, 379 (6th Cir. 2015) (claims for injunctive and declaratory relief moot

after statutory recall); *Pacheco*, 2023 U.S. Dist. LEXIS 49032, at *9, 13; *Sharp*, 2022 U.S. Dist. LEXIS 194163, at *28.

Solak disagrees with this conclusion.  He argues that the recall does not moot the claims for money damages stemming from the amount the putative class overpaid for the defective vehicles. (ECF No. 15, PageID.175-79).  But that position is difficult to fathom when Ford's recall measures would remediate the *very same* "defect upon which" the "diminished-value injury claim[s] [are] based." *Hadley*, 624 F. App'x at 378; *see also Pacheco*, 2023 U.S. Dist. LEXIS 49032, at *9, 12-13; *Sharp*, 2022 U.S. Dist. LEXIS 194163, at *23.

Solak also raises concerns about the recall's effectiveness since Ford has yet to identify the "root cause" of the defect or fashion the necessary replacement parts. (ECF No. 1, PageID.15, ¶ 34; ECF No. 15, PageID.178).  Numerous courts have declined to adjudicate automotive defect cases based on the mere prospect that a recall proves ineffective.

In *Winzler*, for example, the Tenth Circuit held that for mootness purposes:

> [a]ll that matters is that materials *purporting* to identify a defect and to announce a recall are on file with NHTSA.  This much is enough because, with the *act* of notifying NHTSA of a defect and announcing a recall, [the manufacturer] set in motion the statutorily mandated and administratively overseen national recall process.  Its filings with the agency obliged it to notify owners, fix their cars, and do so for free, all pursuant to Congress's command and under NHTSA's supervision. 49 U.S.C. §§ 30118-20.  So it is that, to find this case moot, we need

(and do) only take notice of the existence of filings with NHTSA
purporting to identify a defect and announce a recall.

681 F.3d at 1212 (emphasis in original).

The Tenth Circuit concluded that the plaintiff had to show some "cognizable
danger" that the NHTSA-monitored recall "will fail and [the plaintiff] will be left
without a complete remedy" to withstand a motion to dismiss. *Id.* at 1211-12
(citation omitted). In other words, the plaintiff would have to "identify something
more than the mere possibility of failure sufficient to 'keep the case alive' for Article
III purposes." *Id.* (quotation omitted). The plaintiff in *Winzler* failed to meet that
threshold. *Id.* at 1215.

The Sixth Circuit reached the same outcome in *Hadley*. There, the court of
appeals found that the "plaintiffs' assertion that the ORC Module repair may not be
effective does not evidence an actual or imminent injury" sufficient to overcome
prudential mootness. 624 F. App'x at 380. Instead, the plaintiffs' speculation about
the recall's effectiveness raised "a hypothetical possibility that the plaintiffs' vehicle
was not adequately repaired" – well short of a "cognizable danger."[1] *Id.*; *see also*
*Pacheco*, 2023 U.S. Dist. LEXIS 49032, at *11 (finding automotive defect claims
prudentially moot after the plaintiffs failed to show "a cognizable danger that the

---

[1] Solak concedes that "arguments as to the effectiveness of Defendant's repairs are
speculative at this time because the repairs have not yet occurred." (ECF No. 15,
PageID.175, n.2).

recall remedy supervised by NHTSA will fail"); *Sharp*, 2022 U.S. Dist. LEXIS 194163, at *26 (holding automotive defect claims prudentially moot where the plaintiffs alleged "insufficient facts to show there is an 'actual or imminent' risk that the recall will not remedy their injury.").

Solak's reliance upon *In re Chevrolet Bolt EV Battery Litig.*, 2022 U.S. Dist. LEXIS 179604 (E.D. Mich. Sep. 30, 2022) is unpersuasive. There, the district court concluded that General Motors' voluntary recall offer to "replace [the] batteries in the class vehicles for free" *did not* moot the putative class's entitlement to overpayment damages. *Id.* at *116-17. But that ruling makes little sense when the cost of repairing a defect is the generally accepted measure of overpayment damages and General Motors's offer to replace the defective batteries for free would ensure that the putative class did not incur that expense. *See, e.g., Weidman v. Ford Motor Co.*, 2022 U.S. Dist. LEXIS 66172, at *13-14 (E.D. Mich. Apr. 8, 2022) (collecting cases) ("Courts have recognized the cost to repair a defect is a proper measure of the plaintiffs' damages because they are restored to the position they would have occupied but for the defect.").

The district court's reluctance to dismiss the *Chevrolet Bolt* litigation as moot because the parties had yet to conduct discovery into the recall's effectiveness, is equally puzzling. *In re Chevrolet Bolt*, 2022 U.S. Dist. LEXIS 179604, at *117. The putative class in that case presented nothing more than a "hypothetical possibility"

that the replacement batteries would fail to remedy the asserted defect. *Hadley*, 624 F. App'x at 380.  And that level of speculation "does not evidence an actual or imminent injury" necessary to defeat prudential mootness. *Id.*, *see also Winzler*, 681 F.3d at 1212.   General Motors' notice to NHTSA about the defect and its announcement of a recall should have alone mooted the controversy. *Winzler*, 681 F.3d at 1211; *see also Pacheco*, 2023 U.S. Dist. LEXIS 49032, at *13; *Sharp*, 2022 U.S. Dist. LEXIS 194163, at *24-26, 28.

Because this case is prudentially moot the Court need not address Ford's remaining arguments about whether Solak fails to state a plausible claim for relief under Rule 12(b)(6). *See Sharp*, 2022 U.S. Dist. LEXIS 194163, at *28. Accordingly,

IT IS ORDERED that Ford's motion to dismiss the complaint (ECF No. 13) is granted without prejudice.

IT IS FURTHER ORDERED that the Clerk of the Court is directed to close the case.

**SO ORDERED.**

s/Bernard A. Friedman

Dated: July 19, 2023                          Hon. Bernard A. Friedman
       Detroit, Michigan                       Senior United States District Judge

13